JOHN WHITEMAN'S Ex'x. *vs.* THE WILMINGTON AND SUS-
QUEHANNA RAIL ROAD COMPANY.

Trespass will lie against a corporation.

The state having the *right* of *eminent domain* in all the lands of its citizens, may as-
sert this paramount title and divest private property for public use, making *just
compensation.*

The state may exercise this right through private corporations or individuals, as well
as by its more direct agents.

The legislature is to judge of the propriety and necessity of divesting private property
for public purposes; and it may provide the mode of assessing the compensation.

The supplement to the Wilmington and Susquehanna Rail Road Company's charter
passed at the special session of the legislature in July, 1835, is *constitutional.*

The taking private property for making this rail road is lawful; it being a public im-
provement such property is applied to *public use*, though vested in a private corpo-
ration; and the mode of assessing compensation provided by that act is not liable
to any constitutional objection.

In assessing compensation, the advantage or injury resulting to the owner of the lands
from the construction of the rail road, may be considered. The intrinsic value of
the land taken is not the true rule of damages.

The Governor is the sole judge, under Art. 3, Sec. 12, of constitution, of the "extra-
ordinary occasions" for convening the general assembly.

QUESTIONS reserved by the Superior Court, New Castle county,
for hearing before all the judges.

The case came up to the Court of Appeals, on the questions reser-
ved; and, there being a legal exception to the Chancellor and judges
Clayton and Black, the court, on motion, certified this fact to the
governor, who appointed and commissioned as judges ad litem, *Mar-
tin W. Bates* and *Robert Frame*, Esquires, of Kent county.

This was an action of trespass quare clausum fregit by Whiteman,
against the rail road company, for entering upon his land for the pur-
pose of making their road through the same. The defendants plead-
ed not guilty, and a justification under their charter, on which issues
were joined; and the questions of law reserved.

It was *agreed* that John Whiteman was seized in fee of the land;

and that defendants entered thereon for the purpose of making a rail road under the authority of their charter, and particularly of the act of 24th July, 1835, passed at a special session of the legislature, convened for that purpose by the governor : that defendants in pursuance of the provisions of that act, obtained a condemnation of plaintiff's land, which was valued by the commissioners at $650, which they tendered to plaintiff; and, on his refusal to accept the same, it was deposited to his credit in the Bank of Delaware ; after which they entered plaintiff's land, which was the trespass complained of.

The case was argued in writing, by *W. H. Rogers* for plaintiff, and *J. A. Bayard* for defendants.

For the plaintiff it was urged :—

1st. That the Wilmington and Susquehanna Rail Road Company is a PRIVATE corporation. *Charter. Angell & Ames,* 8, 22 ; 4 *Wheat.* 518 ; 1 *Baldwin,* 223.

2d. That trespass will lie against a corporation. *Ang. & Ames,* 224-6 ; 4 *Sergt. & Rawle,* 6 ; 16 *East,* 6 ; 14 *Com. Law Rep.* 159 ; 3 *Peters,* 400-9 ; *Dig. Del. Laws,* 97 ; 2 *Harr. Rep.* 67, *Wilson vs. Rockland Man. Co.*

3d. That the supplement to the company's charter, passed at the extra session of 1835, is unconstitutional. 1st. Because the legislature was unconstitutionally convened, and their acts therefore void. (*Art.* 3, *sec.* 12,) 3 *Story,* 413, 435 ; 1 *Blac. Com. App'x.* 344 ; 6 *Cranch,* 135 ; 6 *Wheat.* 230. 2d. Because the legislature has no power to transfer the property of an individual to a *private* corporation. It may be "*taken* or applied to *public* use," but not transferred. 1 *Blac. Com. App'x.* 344 ; 3 *Story,* 268 ; 2 *Dall.* 310 ; 1 *Bay,* 252 ; 20 *Johns.* 103 ; 1 *Bald.* 222 ; 6 *Cranch,* 135. 3d. Because, if the property of plaintiff has been applied to *public* use, there is no constitutional compensation provided. 3 *Story,* 661 ; 2 *Bay ;* 2 *Dall.* 312, 315. 4th. Because plaintiff is deprived of the right of *trial by jury.* 1 *Bay,* 390 ; 2 *Dall.* 312 ; 1 *Bald.* 5th. Because the property of plaintiff has been divested without *judicial* action. 6th. Because the legislature has usurped *judicial* power. 6 *Cranch,* 135 ; 3 *Dall.* 394 ; 3 *Story,* 413, 435 ; 4 *Wheat.* 579, 588. (Commissioners do not constitute an " other court" under *Art.* 6, *sec.* 1.) *Sergt. on Const'n.* 378. 7th. Because, by omitting to provide for a *judgment* on the report of the commissioners, the legislature has divested the jurisdiction of the court as established in *Art.* 6, *secs.* 1, 4.

4th. That the company were trespassers because they had not pursued the powers, and complied with the conditions of their charter. *Starkie ;* 1 *Bald.;* 20 *Johns.* 743 ; 2 *Dall.* 316.

The defendant's counsel contended :—

1st. That an action of trespass will not lie against a corporation.

2d. That if it will, the trespass must be shown to be authorized under their common seal to sustain the action. *Com. Dig. Franchise,* (*F.*) 15, 19 ; *Pleader,* (2 *B.* 2.) 1 *Blac. Com. Tit. Corp.* ; *Bac. Abdgt.* 1 *Saund. Plead. & Ev.* 386, 449 ; 1 *Salk.* 192 ; 4 *Wheaton,* 636 ; 3 *Reeves' Eng. Laws,* 88 ; 8 *East,* 230 ; 1 *Kyd on Corp.* 223-5 ; 6 *Vin. Abdgt.* 300. *Corp.* (2 *pl.* 15.) *Fitz. N. B.* (*F.*).

3d. That the supplement to the charter of the company, passed July 24th, 1835, is constitutional ; and that the defendants, by their proceedings under it, acquired the right to enter upon the lands upon which it is alledged the trepass was committed, and that the title to the said lands became vested in them by virtue of said supplement and proceedings. 20 *Johns.* 735, *Rogers* vs. *Bradshaw ;* 7 *Johns. C. R.* 330, *Jerome* vs. *Ross ;* 4 *Wend.* 647, *Wheelock* vs. *Young et al.* ; 2 *Peters,* 251, *Wilson* vs. *B. B. C. Marsh Comp.* ; 12 *Mass. R.* 466 ; 3 *Paige R.* 45, *Beekman* vs. *S. & S. R. R. Co.* ; 11 *Mass. R.* 364, *Stowell* vs. *Flagg ;* 1 *Pick.* 430 ; 1 *Cranch,* 299 ; 1 *Paines' Ch. R. ;* 1 *Nott & M'Cord,* 387 ; 4 *Wheat.* 669 ; 1 *Pick.* 495-6 ; 2 *Johns. Cha. R.* 166 ; 14 *Wend.* 51, *Bloodgood* vs. *M. & H. R. R. Co.;* 3 *B. & Adolph.* 271 ; 4 *Cowen,* 23 ; 5 *Johns. Cha. Rep.* 379.

The opinion of the court was delivered by BATES, *Judge* ad litem.

BATES, *Justice :*—This is an action of trespass quare clausum fregit, brought by John Whiteman, (now deceased) in his lifetime, against the defendants, a corporation, created by an act of the general assembly of this state, passed the 18th of January, 1832, and continuing and now in operation under said act and several supplements, passed the 4th of February, 1833, the 26th of January, 1835 and the 24th of July, 1835, respectively.

The injury complained of in the declaration is, in substance, that the defendants tortiously broke and entered the plaintiff's close, and laid their railway through his land, without his consent and against his will, doing him great damage, by excavating his high and filling up his low land. After the pleas of not guilty and justification, and issues on those pleas, the questions of law are brought before the court in the form of a statement of facts agreed upon, accompanied by the points of law raised by each party, with a written argument of counsel on both sides.

The material facts submitted are, that at the time of the supposed trespasses mentioned in the declaration, the plaintiff was seized in fee of the land upon which they are alledged to have been committed ; that the further supplement to their charter, under which the defendants justify, was passed by the general assembly, (at an extra ses-

sion) on the 24th of July, 1835; and that a message was delivered by the governor to the general assembly at that extra session, which supplement and message are referred to, and make parts of the case. By this supplement it was provided that whenever it should, in the opinion of the directors of the Wilmington and Susquehanna Rail Road company, be necessary for the company to enter into and upon, and occupy any lands or tenements, they should signify the same to commissioners named in the act, whose duty it should be, under oath or affirmation, fairly to estimate the damages that might be done to said lands and tenements by such entry and occupation, and to examine and survey the land, and report their proceedings to the prothonotary of the Superior Court for New Castle county. That it should be the duty of the commissioners, in estimating such damage, to consider the advantages as well as disadvantages resulting to the owner or owners of the land from the rail road; and that upon the return of the report of the commissioners and payment by the company of the sum therein specified, the company should become seized of the same estate in the lands taken, which the owner or owners had held in the same. That if any owner should refuse to accept said sum, or be a minor, feme covert, or absent from or residing out of the state, the company might cause said sum to be deposited to his or her credit in the Farmers' Bank of the State of Delaware, or in the Bank of Delaware, in the city of Wilmington, and that such deposite should operate as payment, to all intents and purposes. But that any owner or owners dissatisfied with any such report might, at the next term after it was returned, apply to the Superior Court, which court might direct a writ of ad quod damnum to be issued to the sheriff of the county, commanding him to inquire by a jury, what damages would be sustained, and make return to the court, &c.

It is agreed that after the passing of this supplement, the defendants gave notice to the commissioners named in the supplement, signifying that in the opinion of the directors it was necessary, for the purpose of making the road, to enter upon and occupy certain lands of the plaintiff described in the notice, and that the commissioners, on the 8th of August, 1835, made and returned to the prothonotary of New Castle county, an estimate of damage, &c., which the said prothonotary filed in his office; which notice and report are also referred to, and taken as parts of the statement. That the defendants tendered to the plaintiff $650, being the amount of damage estimated by the commissioners and mentioned in their report, and this being refused by him, they deposited the same to his credit in the Bank of Delaware. That after the said deposite the defendants, by one Thomas White, their agent, did enter into that part of the plaintiff's land

described in said report to the prothonotary, and did therein the several acts complained of, and paid the said Thomas White for sundry excavations made by him upon said land.

The defendants insist that they are not herein trespassers:—1st. Under the plea of not guilty they say that trespass vi et armis does not lie against a corporation aggregate or that if it lie at all, it is only where the acts supposed to constitute the trespass are authorized by the corporation under its seal. 2d. They justify the several acts complained of, insisting that by the supplement to their charter, made a part of the case stated, and their proceedings under it, the title of the lands on which the trespass is alledged to have been committed became vested in them, and that they had a right to enter upon them and use them for their road.

The plaintiff on the other hand insists that, in this country especially, trespass vi et armis does lie against a corporation; and replies to the defence upon the merits:—1st. That the supplement of July, 1835, is unconstitutional; and, 2d. That even allowing its constitutionality, the defendants have not pursued the provisions and complied with the conditions of their charter, and are therefore none the less trespassers.

To show that trespass does not lie, the defendants rely upon *Com. Dig. Title Franchise, F.* 19, and *Title Pleader,* 2 *B.* 13 ; 1 *Black Com. Title Corporation ;* 1 *Saunders' Pl. & Ev.* 386 ; 1 *Salk.* 192 ; 8 *East,* 230 ; 1 *Kyd's Corp.* 223, 25 ; *Reeves' Eng. Com. Law,* 88 ; 6 *Vin. Abr.* 300 ; and *Fitzh. N. B. F.* 87.

The plaintiff, in favor of trespass, cites among other authorities, 16 *East,* 6 ; *Cowp. Rep.* 86 ; 14 *Com. Law. Rep.* 159 ; 4 *Serg. & Rawle,* 6 ; *Angell & Ames,* 224-26 ; 3 *Peters,* 400-9 ; *Dig. Del. Laws,* 97.

In all the authorities cited by both sides, as well as in many not referred to by either, we have looked in vain for a direct decision of this question. The opinions of eminent judges, and the conclusions of elementary writers of great reputation, are sufficiently accessible, and stand in direct opposition to each other. It is remarkable, however, that a question which seems to have been agitated for centuries, should not to the present day, have been made the subject of express and direct judicial decision. At least we have not been able to find such a decision, in any report either ancient or modern; nor do we decide it now, as involved in our own view of this case; but as the point is made, we think we should not let the opportunity to settle the question in this state pass unimproved.

It cannot be denied that both *Viner* and *Comyn* speak of the law as settled; that trespass lies not against a corporation aggregate. They both assign the same reason, viz: that capias and exigent do

not lie, and they agree in citing *Brown on Corporations, Theloal* and *Thorpe's Assizes.* Comyn adds in the next sentence, that a subpœna will not lie, inasmuch as a corporation has no conscience. Holt, in *Salkeld*, 192, considers a corporation incapable of doing an act *in pais*, without a common seal. And Lawrence, justice, in 8 *East,* 230, takes for granted, that trespass does not lie against a corporation. And still more recently, Mr. Saunders, in his excellent treatise on pleading and evidence informs us, that though trover may be supported, yet that it has been held that trespass cannot, and he cites Lawrence.

The reasons which gave rise to this rule have certainly long since ceased to exist, if indeed there ever was any thing in them. In our country, neither exigent nor capias of the kind intended, were ever used ; nor is it easy to conceive why a capias, or writ of any kind to hold the body, should be deemed essential in an action of trespass, more than in any other. It is believed to be less frequently used, and in some cases of trespass, as replevin, is not even allowable· The same objection moreover, if objection it be, would apply with equal force to all actions, the general issue in which is not guilty ; for in all such actions a capiatur is a part of the judgment at common law.

The defendant's counsel admits that no good reason why the action should not lie, can be found in common sense ; but he considers the law as settled, and submits that this court ought not by judicial legislation to alter the rights and liabilities of corporations, merely because they may originally have been founded in forms and technicalities. Could we be persuaded that the law is so settled, we certainly should shrink from the responsibility of attempting to repeal or even modify it by judicial legislation, however technical and insufficient, or even ridiculous to our apprehensions, the reason of the law might appear. But we are not so convinced. The case of *Yarborough* vs. *The Bank of England,* 16 *East,* 6, was decided on the principle, that actions for torts, without distinction, would lie against a corporation ; and Lord Ellenborough, delivering the opinion of the court of King's Bench, cites several cases in which trespass had been maintained in very early times, under circumstances which preclude the inference that an objection to the form of action was then considered available. His own opinion was, that trespass had been and still might be maintained ; and that the want of authority under the corporate seal, to do the act complained of, was not material. Indeed, the argument of the opinion delivered seems to be, that inasmuch as trespass vi et armis (the higher grade of tort,) may be maintained, therefore, trover and case generally will also lie. In *Riddle* vs. *The proprietors of the Locks aud Canals on the Merrimack river,* 7

*Mass. Rep.* 186-8, although an action for non-feasance, Parsons, chief justice, enters fully and ably into this question. He shows on the authority of *Theloal* himself, the principal reference of *Viner* and *Comyn*, that *Thorpe's* opinion, so much relied upon, had been overruled in England as to certain trespasses; and takes what strikes us as a most sensible distinction between corporations of a public nature, called quasi corporations, against which trespass may not lie, and proper corporations aggregate, by which is meant money and business corporations, against which the action may well be maintained. So in a Pennsylvania case, *Chesnut Hill and Spring House Turnpike Company* vs. *Rutter*, 4 *Serg. & Rawle*, 6, Ingersoll, for the corporation, insists that no distinction can be taken between a misfeasance where the injury is consequential, and one where it is direct; and argues, therefore, that because (as he takes it for granted,) trespass vi et armis cannot be maintained, an action on the case for a misfeasance will not lie; indirectly admitting, that if the action then pending, being for a misfeasance, could be maintained, so might trespass. The court, nevertheless, sustained that action; and Tilghman, chief justice, in delivering the opinion, speaking of the subtilty and technicality of the defence set up, remarks that " it is much more reasonable to say that where a corporation is authorized by law to make a road, if any injury is done in the course of making that road by the persons employed under its authority, it shall be responsible in the same manner that an individual is responsible for the acts of his servants touching his business," and that " there is no solid ground for a distinction between contracts and torts." *Angell & Ames on Corporations*, 224-6, may be read to the same effect; and chief justice Marshall, in a case cited by them, 3 *Peters*, 409, lays it down as well settled that money corporations and those carrying on business are liable for torts, not of a particular description only, but torts generally, committed by their agents. It is also remarkable that *Bloodgood* vs. *The Mohawk and Hudson Rail Road Company*, 14 *Wendall*, 51, a case much relied on by the defendants in the other and more important branch of this cause, was an action of trespass, and that no exception seems to have been taken on this ground.

Other cases might be mentioned, but these are deemed sufficient to show not only that there is no settled rule of law in this country exempting corporations from the action of trespass, but, as we think, that the preponderance of authority sustains the action. Even should there be more of soundness than we discover in these technicalities, behind which defendants of this class have so often sought to protect themselves, the difficulty is disposed of in this state by the " Act for expediting suits against corporations," which provides that suits may

be brought against them at law, by summons, and in chancery by subpœna, and that if they fail to appear by attorney, judgment shall be rendered as in ordinary cases of judgment by default. There is certainly nothing in reason or justice to entitle them to the exemption claimed. Numerous as they have become, and constantly multiplying in the midst of us as they are, it would be unjust to society, as well as unreasonable in itself, to suffer them to escape the consequences of direct injuries inflicted upon citizens by their agents in the prosecution of their business.

We are, therefore, of opinion that this suit, so far as the form of action is concerned, is well brought.

We next consider the more important question, whether the provisions of the supplement of the 24th July, 1835, for the appropriation of the property of individuals to this rail road, are within the limits of the constitutional powers of the general assembly.

On the one hand, it is not pretended that the property of one individual can, by any power known to our institutions, be transferred against his consent to another, or to any number of individuals, as such; or even to the public, without a just compensation.

Two considerations or inquiries present themselves, as covering this part of the case—1st. Is the use to which the legislature has attempted to appropriate the land of Mr. Whiteman, a public use? and 2d. If so, does the act secure to the individual owner a just compensation?

It is the established doctrine of this country, as well as of England, that the power to decide when the public interest requires the appropriation of private property to public use, and the right to provide for such appropriation against the will of the owner, are, with the single restriction of just compensation to him whose individual right of property is invaded, inherent in the legislature. It follows that if the legislature had provided for the construction of this rail road from the Pennsylvania to the Maryland line by the agents of the state and at the public expense, the right to appropriate private property on just compensation would not have been debatable, although tolls should have been reserved to the state, and the use of the road restrained to particular modes of travelling and transportation. The right to use it by all upon the same terms, would constitute it as essentially a public use, as if it were so for all the purposes of a common road.

But it is said that the Wilmington and Susquehanna Rail Road Company is a private corporation, and that although private property may be taken for public use, it cannot be transferred to a private corporation. So are all turnpike companies private corporations, and

yet the roads constructed by them are public roads; and not the less so because the use of them may be regulated by law, as the legislature shall deem on the whole most conducive to the public interest; or because of the obligation to pay an equivalent for the use of them to a private corporation. It is sufficient if the use be secured to the public in the sense intended by the constitution. This union of private property with public use is not peculiar to turnpike roads. Canals, toll-bridges and ferries, constructed and kept up by corporations, all furnish familiar examples. The tolls are the property of the corporations, while the use belongs to the public. In this way, facilities for travelling and transportation of the highest importance are secured to the public, which never would and never ought to be attempted at the public expense. Rail roads in particular, are improvements of this character. It is true that the modes of using them are circumscribed within very narrow limits; yet within these limits their capacity for public benefit is immense. They bring the north and the south, the east and the west, the seaboard and the interior within a few hours of each other, producing results alike beneficial to all.

Whatever differences of opinion, as to the constitutionality of these acts of incorporation might exist if the question were new, it is now too late in the history of our country to deny to the legislative authority the right to take private property for the furtherance of such works; or, in this respect, to make a distinction between those constructed and kept up by corporations or individuals, and those made and maintained directly by the public. There are few, if any, states in the union which have not incorporated more or less companies of the kind, or which have not (particularly in the case of turnpike and rail roads) appropriated to the improvements constructed by them private property, as freely as to the opening of common highways. Even in the absence of adjudged cases, the practice of so many state legislatures, acquiesced in by the public for so many years, has established a rule of construction not to be overlooked, nor for slight reasons to be departed from.

But this practice has been sanctioned, and the right asserted by it on the part of the legislature recognized as legitimate, by many of the most respectable state courts, and no where to our knowledge judicially impugned. In the case of *Beekman* vs *The Saratoga and Schenectady Rail Road Company*, (3 *Paige's N. Y. Ch. Rep.* 45,) the question of the constitutionality of an act of the legislature of New York, authorizing the defendants (a private corporation,) to take upon just compensation, private property for the purposes of their road, without the consent of the owner, was the principal question. It was argued at length and with much ability by counsel, and elaborately

and ably considered by chancellor Walworth, whose decision, among other things, fully sustains these positions :—1st. That the eminent domain remains in the aggregate body of the people, in their sovereign capacity ; and that possession of private property may be resumed by them, whenever the interest or even the convenience of the state is concerned ; as where the land is wanted for a road, canal, or other public improvement. 2d. That the only restriction upon this right of resumption for public use is, that the property cannot be taken without just compensation to the owner, and in the mode prescribed by law. 3d. That in cases of public improvement, from which a benefit would result to the public, this right of eminent domain may be exercised, either directly by the agents of the government, or through the medium of corporate bodies, or by means of individual enterprise. 4th. That rail roads designed for the use of the public, are public·improvements, to the purposes of which the legislature can appropriate private property, or may authorize an individual or corporation to appropriate it, upon just compensation to the owner. 5th. that it rests in the wisdom of the legislature to determine whether the benefit to the public be of sufficient importance to render expedient the exercise of the right of eminent domain, and to authorize an interference with the private property of individuals for that purpose.

In the subsequent case of *Bloodgood* vs. *The Mohawk and Hudson Rail Road Company,* in the Supreme Court of the State of New York, (18 *Wendall,* 51,) the court had no doubt of the constitutional right of the legislature to authorize the defendants to take the land necessary for the construction of their road, without the consent and against the will of the owner. And in the still later case of the *Tide Water Canal Co.* vs. *Archer,* in the State of Maryland, (9 *Gill and Johns. Reports,* 479,) it is laid down as well settled in that state, that this right of eminent domain may be exercised for public benefit by corporations or individuals upon whom the legislature has, within proper limitations, conferred the power. So, according to the opinion of chief justice Marshall, in *Wilson* vs. *The Black Bird Creek Company,* (2 *Peters,* 251,) measures calculated to produce benefits to the public, though effected through the medium of private incorporations, are within the powers reserved to the states, and are proper subjects for the exercise of the power to appropriate private property. In these views we concur.

The Wilmington and Susquehanna rail road is, by the terms of its charter, made a public highway for the conveyance of passengers and the transportation of merchandize and commodities : and it is remarkable that both in the original act and in the supplement au-

thorizing the adverse entry into and use of the plaintiff's land, the power of revocation is reserved to the legislature ; in the original act on conviction of the company of any (even the slightest) abuse or misuse of the privileges granted ; and in the supplement at discretion.

But it is said that even if the property has been applied to public use, there was no constitutional compensation to the plaintiff provided, because he has been deprived of a jury trial, and his property divested without judicial action. This objection mistakes the facts of the case. The plaintiff was not deprived of a trial by jury, the supplement complained of providing him both a jury trial and judicial action if he had chosen to resort to them. Independently of this consideration, we do not see why the legislature may not constitutionally provide for ascertaining the amount of compensation by other means than by the intervention of a court or jury.

It is also insisted that the general assembly exceeded its constitutional powers in directing that the commissioners for ascertaining the amount of compensation, should take into consideration the advantages as well as disadvantages that would result from the rail road to persons whose lands should be taken. We are not of this opinion. The language of the constitution of the United States is, " nor shall private property be taken for public use without just compensation ;" that of the constitution of this state, " without the consent of his representatives, and without compensation being made." What *is* just compensation? Certainly not the intrinsic value of the land taken. Suppose the land taken to be in itself worth one thousand dollars, but that the improvement to which it is applied enhances the value of the individual owner's other property five hundred dollars. It is manifest that a sum exceeding five hundred dollars in addition to this enhanced value, would be more than a just compensation for the damage sustained. It might also happen, that the amount of damage received would greatly exceed the intrinsic value of the property taken, in which case such intrinsic value would be less than a just compensation. The rule which should assume the intrinsic value as the measure of compensation would operate very unequally, and sometimes very unjustly. It is not easy to perceive any other mode of arriving at a just compensation than by considering all the consequences of the act complained of ; whether they enhance or mitigate the injury.

Another objection to the validity of this supplement is founded upon the assumption that the general assembly which passed it was not constitutionally convened, and that consequently not only this, but all its acts at that session are absolutely void. In the constitution of this state, (Art. 3, Sec. 12,) the governor is authorized to convene the

general assembly on extraordinary occasions. This is a power, the exercise of which the framers of the constitution have seen fit to entrust to the chief executive officer of the state alone. As they have not defined what shall be deemed an extraordinary occasion for this purpose, nor referred the settlement of the question to any other department or power of the government; the governor must necessarily be himself the judge, *or he cannot exercise the power.* He may err, but this court has no jurisdiction to review his decision or correct his error. If he act corruptly he is liable to impeachment; but the doctrine that a mistake or even corruption on the part of the governor in convening the general assembly invalidates the acts of that body, would be productive of incalculable mischief.

Inasmuch, therefore, as the act of the general assembly providing for its construction, secures to this rail road when completed the essential characteristics of a public highway, and also to individuals whose property may be taken, a just compensation, we have no doubt of the constitutionality of the provisions, appropriating such private property as may be found necessary for the completion of the work.

Another and distinct ground of action submitted by the plaintiff is, that the defendants are trespassers, because they have not pursued the powers and complied with the conditions of their charter. We are referred to the direction contained in the twelfth section of the original act, that the president and directors shall, within six months after ascertaining the route of the rail road, cause an accurate survey of the lines of the said road to be made, a map or plot of which survey they shall cause to be filed in the secretary's office of this state, &c. It is urged that the filing of this survey is a condition precedent to the defendants' right of entry into lands, except for the mere purpose of locating the road; and that having occupied the land in question for the purpose of construction, without the performance of this condition they are still trespassers.

Whatever doubts may have arisen in the construction of the original act in this respect, we are united in the opinion that the supplement, under which the defendants justify, authorizes them to enter for construction without the performance of any such precedent condition. It contains its own conditions upon which lands may be taken and occupied, without reference, express or implied, to those in the original act, or to the survey there mentioned. And it appearing by the case stated, that the defendants had complied with these conditions before their entry for construction, we think that entry was lawful.

*Judgment.*—And now to wit, &c., the questions of law reserved in this cause coming on to be heard in the Court of Errors and Appeals

of the State of Delaware; and the court having considered the same, and the written arguments submitted by counsel on both sides, learned in the law; and the same being fully understood by the said judges; it is considered by the court that the action of trespass is sustainable against a corporation; but that the matters set forth in the case stated constitute in law a good and sufficient justification on the part of the defendants, for the acts complained of in the plaintiff's declaration. And it is ordered by the court, that the costs in this court be paid by the said plaintiff; and that the decision of this court upon the said questions of law be certified to the court below; and that the record be remanded to the court below.