THE STATE OF DELAWARE, *ex rel.* James W. Smith, v. JAMES B. CAREY, resident Associate Judge in Sussex County, and DANIEL L. HERRMANN, Associate Judge, who constitute the Superior Court of Sussex County and the Board of Canvass thereof under Section 6 of Article V of the Constitution of the State of Delaware, and RAYMOND M. LANK, Intervener.

(*March* 15, 1955.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Houston Wilson* for relator.

*Daniel J. Layton, Jr.,* and *W. Howard Thompson* for inter-vener.

Supreme Court of the State of Delaware, Mandamus, No. 31, 1954.

SOUTHERLAND, C. J.:

James W. Smith, the relator, seeks a writ of mandamus to the Superior Court of Sussex County, sitting as the Board of Canvass, directing it to reconvene and recanvass the vote and issue to him a certificate of election.

The essential question is whether in the circumstances pre-sented this Court should in the exercise of a sound discretion entertain the petition. The facts are these:

At the general election held November 2, 1954, James W. Smith and Raymond M. Lank were the opposing candidates for the office of Representative in the General Assembly from the Tenth Representative District of Sussex County. The Superior Court, sitting as the Board of Canvass, found that Smith had received 2610 votes and Lank 2735 votes and issued certificates of Lank's election. The votes counted included those cast by absentee ballot under the provisions of the absentee voting laws. 15 *Del. C. Ch.* 55, as amended in 1953 by 49 *Del. L. Ch.* 278. Without the absentee ballots Smith would have been elected. Smith, the relator, moves for summary judgment. He asserts that the absentee voting laws are unconstitutional; that all absentee

ballots should have been rejected; and that this Court should direct the Board of Canvass to issue to him a certificate of election.

Lank has intervened and answered, and has also moved to dismiss the petition for lack of jurisdiction.

From the affidavits supporting the motions of the parties the following facts appear:

On December 11, 1954 Smith served upon Lank written notice of his intent to contest the election, and on December 17th served written specification of the grounds relied upon. On January 4, 1955, the opening session of the House of Representatives of the General Assembly convened. Smith's counsel presented to the presiding officer a petition to contest the election, accompanied by copies of the notice and specifications referred to. All of this procedure is required by the provisions of 15 *Del. C.* § 5901 ff., relating to contested elections of members of the General Assembly.

Thereafter, during the course of the same session, the House adopted the following resolution:

"Resolved, That Raymond M. Lank, who has been certified and returned by the Superior Court of Sussex County, sitting as the Board of Canvass thereof, as elected to the office of Representative in the General Assembly of the State of Delaware from Representative District Number Ten in Sussex County, shall retain his seat as a member of this House upon taking and subscribing the prescribed oath: Subject, Always, to the Contested Election this day filed against his election and return by James W. Smith and to the right and power of this House, upon final hearing, determination and judgment in the matter of such Contested Election, to unseat him, the said Raymond M. Lank, and to seat the contestant, James W. Smith, in his place and stead; and further,

"Resolved, That such Contested Election be referred unto the Committee on Elections, when formed, for its report and

advice upon the manner in which this House shall proceed further in the matter."

The House has accordingly assumed jurisdiction of the contest.

Two questions have been argued. First, upon the merits, relator contends that the provisions of the absentee voters' law are unconstitutional. His argument runs somewhat as follows:

The provisions of §§ 4A and 4B of Article V of the Constitution direct the General Assembly to enact laws permitting absentee voting in certain cases. Any law so enacted, argues relator, must conform as far as possible to the provisions of Section 6 of the same Article, which contemplate that the ballots shall be cast and counted in the election districts, that the results shall be certified by the election officers, and that the state of the election shall be ascertained by the Board of Canvass from the certificates so made. Such a law, says relator, must also afford some reasonable method of exercising the right of challenge for bribery preserved in Section 3 of Article V. The absentee voters' law, at least as amended by the 1953 Act, fails to conform to these requirements, says relator, because it attempts to transfer in part to the Board of Canvass the duties of local election officers, permits a voter (in effect) to cast a ballot at the county seat instead of in his election district as apparently contemplated by Section 4A itself, and contains no provision preserving the right of challenge for bribery guaranteed by Section 3. The statutory scheme, relator asserts, increases the opportunity for electoral frauds.

■■ This argument appears to have considerable force. In the light of the provisions of Section 1 of Article V, it is certainly the duty of the General Assembly, in enacting an absentee voters' law, to take all possible precaution against fraudulent abuse of the privilege. But a thorough analysis of the present law in the light of the history of our constitutional and statutory provisions dealing with elections would be required to arrive at

a positive opinion upon its constitutionality, and we do not pursue the matter further. This is not a case in which the question can be decided. For the reasons hereafter stated, the relief sought—the issuance of the writ of mandamus—must be refused. Hence any opinion we might give upon the constitutional question would be dictum. The case of *State ex rel. Biggs v. Corley*, 6 *W. W. Harr.* (*36 Del.*) 135, 172 *A.* 415, is cited as a precedent for the expression of views by way of dictum upon a question of public importance. We have some doubt of the wisdom of approving such a precedent, since the expression of dictum is ordinarily to be avoided. But it is enough to say that the *Corley* case did not involve a question of the constitutionality of an act of the Legislature. Certainly a court should refrain from dicta upon constitutional questions. We therefore do not reach the merits.

We pass to the second question—intervener's motion to dismiss. The ground of this motion is that the House of Representatives has assumed jurisdiction of the contest. Should this Court proceed further with the matter?

It is true that upon filing of the petition in this ·case our jurisdiction over the cause attached. And the power of this Court to issue mandamus to the Board to compel the counting of the vote in accordance with law is too well settled to be questioned now. *State ex rel. Walker v. Harrington*, 3 *Terry* (*42 Del.*) 14, 27 *A.* 2d 67; *State ex rel. Wahl v. Richards*, 5 *Terry* (*44 Del.*) 566, 64 *A.* 2d 400; *State ex rel. Mitchell v. Wolcott*, 7 *Terry* (*46 Del.*) 368, 83 *A.* 2d 762, 768. This procedure is not a method of trying the title to the office; it serves only to give the successful candidate evidence of his *prima facie* title. In the *Wahl* case the jurisdiction was upheld in a case involving the election of a member of the House of Representatives of the General Assembly, over objection that the jurisdiction did not extend to such a case because of the constitutional provision making each branch the judge "of the elections, returns and qualifications of its own members". *Constitution*, Art. II, § 8.

But the circumstances of this case are quite different from those of the *Wahl* case. There the determination of the question presented was made before the House convened and before any certificate had been presented to it. Under the law the certificate of election is not delivered until the first day of the meeting of the General Assembly. 15 *Del. C.* § 5709. So far as appears from the opinion, no contest had been initiated.

It may be admitted that the convening of the House did not necessarily strip this Court of its jurisdiction theretofore acquired. But there is another question to be considered. We said in *State ex rel. Mitchell v. Wolcott, supra:*

"Mandamus is a discretionary remedy, * * * and its use to review the ruling of the Board might conceivably be inappropriate in certain cases."

In the instant case the House of Representatives has assumed jurisdiction of the contest initiated by Smith. It now has the power and the duty to decide the question that we are asked to decide. Its jurisdiction extends to questions of law as well as of fact. *People ex rel. Drake v. Mahaney*, 13 *Mich.* 481.

In these circumstances we are of opinion that we should decline to exercise our jurisdiction over the Board of Canvass. The matter is one for the decision of the House.

The case of *Greenwood v. Board of Registrars of Voters*, 282 *Mass.* 74, 184 *N. E.* 390, 392, is in point. In Massachusetts, as in Delaware, the remedy of mandamus appears to be available to a candidate, defeated on the face of the returns, to correct an erroneous return and compel the issuance to him of a certificate of election. In that case such a petition had been filed to review the returns upon the election of a representative in the Legislature. Hearings were held before an auditor and a single justice, and facts had been found.

Thereafter the case came on for argument before the court. In the meantime the General Court had convened, the contest was brought before the House, and its committee had held hear-

ings upon the matter. The Supreme Court declined to proceed further with the case. Chief Justice Rugg said:

"It is manifest from the facts already stated that the House of Representatives is exercising its jurisdiction over the entire subject of the returns, election and qualification of the member entitled to sit for the Eleventh Worcester district as between the petitioner and the intervenor as rival claimants, and that it is proceeding to a final determination of that subject.

"The petitioner contends that this court should nevertheless order that the respondents, the registrars of voters, count the ballots in conformity to the facts as found on this record, that certificate be issued in accordance with such recount, and that the intervenor surrender the certificate of election previously issued to him. This contention cannot be supported. The certificate to the effect that the intervenor has been elected was seasonably issued, presented to the House of Representatives, and has served its purpose in connection with the contest by the petitioner of directing the attention of the House of Representatives to the question whether the intervenor is entitled to be declared a representative. * * *

"It is unnecessary to determine questions raised by the petitioner as to the regularity of the issuance of the certificate to the intervenor. That and all cognate matters at this stage have come within the jurisdiction of the House of Representatives. The decision of such questions has become moot so far as this court is concerned and therefore any decision would be nugatory and unavailing."

It does not appear in this case that the House Committee on Elections has held hearings or has reported upon the matter. This distinction is of no consequence. It may do so at any time. The resolution contemplates that it will do so. True, relator has declared his intention to withdraw the contest if this Court's opinion should be adverse to him. But this concession cannot limit the powers of the House, nor does it touch the point of the matter, which concerns the relationship of the judiciary to the legislature

in cases of contested elections of members of either house. This is a field upon which we should not enter when it appears that the house concerned has taken cognizance of the contest.

We think that due regard for the prerogative of the House requires us to relinquish jurisdiction. Any opinion that we could give would be only an advisory one, since it would not be binding upon the House. The only legal result, if relator were successful, would be the presentation to the House of a second certificate that would confer upon the relator no right with respect to his contest that he does not already possess. It is elementary that the writ of mandamus will not be granted to compel the performance of a futile act. 34 *Am. Jur.* "Mandamus", § 37.

It follows that the petition must be dismissed. The costs will be equally divided between the parties.