THE STATE OF DELAWARE, Upon the Relation of Raymond E. Massey, Petitioner, v. CHARLES L. TERRY, President Judge of the Superior Court of the State of Delaware, and ANDREW D. CHRISTIE, Associate Judge of the Superior Court of the State of Delaware, Resident in New Castle County, State of Delaware, constituting the Superior Court of the State of Delaware in and for New Castle County and sitting as the Board of Canvass in and for New Castle County, State of Delaware, Respondents, v. F. EARL McGINNES, JR., Intervening Respondent.

(*January* 30, 1959.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Clarence W. Taylor* and *Robert C. O'Hora* for petitioner.

*Samuel R. Russell* for intervening respondent.

Supreme Court of the State of Delaware, No. 57, 1958.

WOLCOTT, J.:

This was a petition for an original writ of mandamus seeking to compel the Board of Canvass of New Castle County to reconvene for the purpose of counting absentee ballots allegedly cast at the General Election of 1958 in five separate election districts of the Seventh Representative District. The petition was filed on the relation of the unsuccessful Republican candidate for the office of Representative in the General Assembly. The successful candidate was permitted to intervene to oppose the issuance of the writ and to file a cross-petition for mandamus to count similar votes in additional election districts in the event the prayers of the first petition should have been granted.

Because of the imminence of the convening of the General Assembly, we advanced argument on the petitions. On December 26, 1958 we dismissed the petitions and advised counsel that an opinion stating our reasons would be filed later.

The facts which led to the filing of the petitions may be briefly stated. Voting at the election of 1958 was by voting machines in each of the election districts. In addition to the voting machines, most, if not all, of the election districts were furnished with ballot boxes for the voting of all absentee ballots cast in that particular election district. After the closing of the polls the election district officers are required to tally the vote in the particular election district by totaling the results shown on the voting machines and by counting any absentee ballots which have been deposited in the ballot boxes, and to execute in triplicate certificates of the result of the election in the particular election district.

On the second day following the election all three certificates, one of which is required to be contained in the ballot box and one of which is required to be retained by each of two election district officers of opposite political parties, are required by 15 *Del. C.* § 4978 to be delivered at noon to the Superior Court sitting as a Board of Canvass in the particular county.

By 15 *Del. C.* § 4514 the Department of Elections for the county is required to furnish the district election officers with printed forms of certificates on which to certify the result of the election in the several election districts. The certificates thus furnished in the election of 1958 were in the same form as those furnished in the election of 1954, at which time the law required the counting of absentee votes by the Department of Elections. However, as the result of this Court's opinion in *State ex rel. Smith v. Carey*, 10 *Terry* 143, 112 *A.* 2d 26, the absentee voting law was amended to require the actual voting of absentee ballots in the several election districts, thus affording the right to challenge in the election place, and the tallying of such votes by the election officers of the several election districts. The result of the failure of the Department of Elections to revise the form of certificate was to leave in doubt the manner of recording on the the certificates the result of the absentee voting.

It appeared from the record before us that throughout the several election districts the practice of recording the absentee vote varied with the election officers. Some certificates recorded the total of absentee votes as a separate total; some certificates merely included such votes in the general total without showing a separate total of absentee votes; and, apparently, some certificates did not include absentee votes at all. It further appeared that in not all election districts of New Castle County were absentee ballots received to be voted.

The Board of Canvass of New Castle County met at noon on November 6, 1958 as required by Article V, Section 6 of the Constitution, *Del. C. Ann.* to "publicly ascertain the state of the election throughout the county." By that section of the Con-

stitution the various certificates of election are required to be delivered to the Board of Canvass which is authorized "in case the certificates produced do not agree, or in case of complaint under oath of fraud or mistake in any such certificate, or in case fraud or mistake is apparent on the face of any such certificate", to open up the ballot boxes and to make a recount of the ballots in the box.*

The certificates applicable to the particular election districts this petitioner desired recounted all agreed on their faces, and were uniform in not showing a separate tally of absentee votes. It is thus obvious that, absent the filing of a complaint under oath of fraud or mistake in such certificates, the Board of Canvass was without authority to do other than accept the certificates at their face value and officially record the vote for those districts as reflected in the totals shown on the certificates.

The petitioners attempted to supply the Board of Canvass' authority to make the requested recount by filing a complaint under oath alleging the mistake of the election officials in failing to record the total of absentee votes cast in the particular election districts. The complaint under oath was rejected by a divided Board of Canvass on the ground that it had not been filed within the time set by the Board for the filing of such complaints. The propriety of this time limitation was the narrow question presented and decided in this proceeding.

The facts were that when the Board of Canvass convened at noon on November 6, 1958 the presiding member of the Board announced that all petitions (complaints under oath) for recount of the votes in the election districts must be filed with the Board before 1:00 p.m. on that day.

Shortly before the set deadline, a petition for recount was received from the unsuccessful Democratic candidate for the

---

*The provision was written at a time when all voting was done by paper ballot. Under the modern condition of use of voting machines the procedure for a recount includes the examination of the recording tapes in the machines, as well as the recounting of the paper ballots, which, under our present election law, necessarily are absentee ballots only.

office of Levy Court. Argument by counsel was then heard upon the sufficiency of the petition. Thereupon, counsel for the apparently successful Republican candidate asked for and received an extension of time within which to present a similar petition. Subsequently, at 10:00 a.m., November 7, 1958, both of these petitions were accepted by the Board.

Thereupon, in the morning of November 7, 1958, the present petitioner, who in the interval had changed from the apparent unofficial victor to the unofficial loser, presented a petition to recount the vote in several election districts, alleging mistake in the preparation of the certificates. This petition was rejected by a divided Board on the ground that it failed to meet the deadline for filing previously fixed and that no application for an extension of time had been made.

The primary question, therefore, for our decision, was whether or not the Board of Canvass had authority to fix a deadline for receiving petitions for a recount. If such authority existed, the writ should be denied, for, admittedly, the petition was not filed on time.

The petitioner argued that the Board necessarily was without authority to limit the time within which petitions for recount might be filed for the reason that to do so would prevent the exercise by interested parties of the constitutionally conferred right to petitions for a recount. The argument was that since the Constitution, itself, imposed no time limitation in the exercise of the right, the fixing of a time limitation by the Board of Canvass was a denial of the right.

Petitioner cited to us a number of authorities to the effect that courts by rule may not create the bar of a statute of limitations to the enforcement of a legal right. We do not review these decisions for the reason that we think them inapposite to the question presented for our decision.

The fixing of a limitation of time for the exercise of the right to demand a recount is not a denial of the right to

petition for such recount, but is a regulation adopted to further the orderly procedure of the canvass of the vote. As such, it is more nearly analogous to court rules of procedure and practice than to a statute of limitation, to which the petitioner seeks to compare it. There is no doubt at all that courts, particularly in Delaware, have long had the inherent authority to promulgate rules governing practice before them, and, by such rules, to require the taking of certain steps within certain times. The principle is so well fixed in Delaware law as to require no citation of authority.

If, therefore, the Boards of Canvass were judicial tribunals, they possessed the inherent power to promulgate rules governing the proceedings before them, and the question raised found its answer in that inherent power. It is true, however, that the Boards of Canvass created by the Delaware Constitution are difficult to catalogue as either judicial or administrative bodies.

In *State ex rel. Walker v. Harrington,* 3 *Terry* 14, 27 *A.* 2d 67, they were held to be quasi-judicial tribunals, at least for the purpose of subjecting them to the writ of mandamus of this court. On the other hand, the functions of the Boards of Canvass have been characterized as largely, if not entirely, ministerial and administrative in character. *State ex rel. Mitchell v. Wolcott,* 7 *Terry* 368, 83 *A.* 2d 762. The precise character of the Boards of Canvass, however, is considered to be immaterial, for administrative tribunals, as well as judicial, have inherently the power to make rules and regulations to govern the proceedings before them. 42 *Am Jur.,* Public Administration Law, § 35.

Of necessity, this must be the result, for, otherwise, chaos would result in public administration. For example, the canvass of the result of a general election in New Castle County is a laborious, tedious and time-consuming process. The practice customarily followed is to start the canvass with the first election district of a particular ward or representative district, and to tabulate the result for that district and each district in turn serially. The actual canvass takes several days for its accomplish-

ment. It is apparent that an orderly canvass can be made only if prior to the actual start of the tabulation the members of the Board have knowledge of what districts are in dispute, and in which an actual recount of the vote will be required. Otherwise, demands for recount of districts already canvassed might be presented toward the end of the process of canvassing as the desperate hope of an unsuccessful candidate for office. If such were to be permitted, the labors of the Boards of Canvass in conducting the actual recount would be tentative at best, and interminable at worst. We thought orderly and efficient procedure required the fixing of a deadline beyond which complaints under oath for a recount of specified election districts would not be received. We noted, also, that the fixing of an early deadline for the receiving of such complaints was the uniform practice of the Boards of Canvass in the several counties of the state. This practice had existed within the memory of this Court for at least twenty-five years without any contention that the rule was beyond the authority of the Boards of Canvass. We concluded, therefore, that the fixing of a deadline for the filing of petitions for recount was clearly and necessarily within the powers of the several Boards of Canvass.

Next, petitioner argued that the time fixed for the filing was so short as to be unreasonable. Again, we noted that the fixation of a very early deadline had existed at least upwards of twenty-five years without challenge. It had, therefore, become settled practice. As such, notice of it must be charged to the political party officials of the state and the candidates of these parties.

Finally, petitioner asserted he in fact was not present at the time the time was fixed and, hence, had no notice. The Boards of Canvass are required by the Constitution to convene at 12:00 o'clock noon on the second day following a general election. Everyone is chargeable with notice of this hour of meeting. The petitioner as an interested party should have been present if he thought his rights in jeopardy. He was not present, but

that fact did not excuse his failure to comply with the valid rules of the Board of Canvass.

For the foregoing stated reasons, we accordingly denied the petition, and cross-petition, for writs of mandamus. We have thought fit to amplify our decision by this opinion because of the challenge to the authority of the Boards of Canvass to regulate the proceedings before them, and the possible importance of the decision for their guidance in the future.

