OPINION OF THE JUSTICES OF THE SUPREME COURT IN RESPONSE TO QUESTIONS PROPOUNDED BY THE GOVERNOR OF DELAWARE.

(*March* 16, 1964.)

His Excellency Elbert N. Carvel,
Governor of Delaware:

Reference is made to your letter of February 14,

1964, addressed to the Chief Justice, requesting the opinion of the members of the Supreme Court upon certain questions involving the construction of the provisions of two Articles of the Constitution of the State of Delaware.

Your letter states that on December 13, 1963, a bill to reorganize the Levy Court of New Castle County was vetoed by you and that subsequent to that date you have appointed a panel to recommend to the General Assembly and yourself an alternative proposal to reorganize the New Castle Levy Court. Accordingly, you have requested the opinion of the court, pursuant to 10 *Del. C.* § 141, to answer the following questions:

"1.  Does Art. 2, Sec. 4, preclude the enactment of valid legislation for the reorganization of the Levy Court of New Castle County, at the current regular 1964 Session of the General Assembly?

"2.  If so, may the Governor convene the General Assembly by proclamation in 'extraordinary' session in 1964, under Art. 3, Sec. 16, for the purpose of enacting legislation for the reorganization of the Levy Court of New Castle County?

"3.  If the answer to Question No. 2 is conditionally affirmative, under what conditions may the Governor do so?"

Art. 2, Sec. 4, as amended on April 10, 1959, provides:

"§ 4.  Time and frequency of sessions.  Section 4. The General Assembly shall meet on the first Tuesday of January, nineteen hundred and sixty-one, and on the same day in every second year thereafter, and on the first Tuesday in February, nineteen hundred and sixty-two, and on the same day in every second year thereafter, and at no

other time, unless convened by the Governor. When the General Assembly shall be convened by the Governor, the session shall not continue longer that thirty days.

"The General Assembly may continue its session so long as in its judgment the public interest may require, for a period not longer than ninety legislative days in odd years and thirty legislative days in even years. In any of said thirty legislative day sessions in even years, the General Assembly shall consider no bills other than (1) bills having to do with budgetary, revenue and financial matters, (2) legislation dealing with an acute emergency, and (3) legislation in the general public welfare."

Art. 3, Sec. 16, of the Constitution is as follows:

"§ 16. Special Sessions of General Assembly; adjournment; special session of Senate. Section 16. He may on extraordinary occasions convene the General Assembly by proclamation; and in case of disagreement between the two Houses with respect to the time of adjournment, adjourn them to such time as he shall think proper, not exceeding three months. He shall have power to convene the Senate in extraordinary session by proclamation, for the transaction of executive business."

█ Addressing ourselves to the initial question propounded by you, we note that the 1964 regular session would be subject to the limitations prescribed in Art. 2, Sec. 4, concerning regular sessions convened in even years. Therefore, a proposed reorganization of the Levy Court of New Castle County, to be constitutional, if passed during the regular session, must fall within the three categories specified in the above-cited provision of the Delaware Constitution. A reorganization of the Levy Court of New Castle County would clearly not fall within category (1) i.e., legislation dealing with budgetary, revenue

and financial matters. With respect to the second category, i.e., legislation dealing with an acute emergency, the material furnished in your letter provides no facts upon which a judgment supporting the existence of an acute emergency could be predicated. If such legislation was passed predicated upon a legislative finding of acute emergency, although that finding would be entitled to substantial weight, this court would have the responsibility and duty to determine whether or not an acute emergency, in fact, existed. See Opinion of the Justices, 177 A.2d 205 (Del. 1962). However, because no findings have yet been made or attempted, we decline to state categorically that such proposed legislation could not be construed as within Category (2) ; we merely state that at the present time there has been no showing of acute emergency.

■■ With respect to Category (3), the proposed legislation would clearly affect only one county of the state. Accordingly, it must be considered as a local or special law as opposed to legislation in the general public welfare. See Opinion of the Justices, 181 A.2d 215 (Del. 1962). Accordingly, subject to the above-described caveat with respect to Category (2), we are of the opinion that Question No. 1 should be answered in the affirmative.

■ With respect to the second question, the opinions of the CHIEF JUSTICE and Justice CAREY are as follows: It is clear that Art. 3, Sec. 16, allows the Governor, in his sole discretion, to convene an extraordinary session of the General Assembly. The decision of the Governor to convene such a special session cannot be subjected to judicial review. As was stated in *Whiteman's Ex'x v. Wilmington & S. R. Co.*, 2 Har. 514, 2 Del. 514 (1839) :

"This is a power, the exercise of which the framers of the constitution have seen fit to entrust to the chief executive officer of the state alone. As they have not de-

fined what shall be deemed an extraordinary occasion for this purpose * * * the governor must necessarily be himself the judge or he cannot exercise the power." (At Page 525)

The power granted by Art. 3, Sec. 16, is the power to *convene* a legislative session; Art. 3, Sec. 16, is silent upon the matters that may properly be considered at such a special session. The precise question presented is whether or not the Legislature may, after the Governor has exercised his unquestioned power to convene a special session, enact legislation in an even year beyond those subjects embraced in Art. 2, Sec. 4. Therefore, although the decision of the Governor to convene a special session under Art. 3, Sec. 16, of the Delaware Constitution is not subject to judicial review, this court may be required to pass upon the constitutionality of any legislation emanating from such a special session.

We are aware that certain language in a previous advisory opinion rendered by this court may be construed to indicate that the limitations contained in Art. 2, Sec. 4, of the Delaware Constitution would be inapplicable to a special session convened during an even year. See Opinion of the Justices of the Supreme Court, 175 A.2d 543, 546 (Del.1961). Such language is admittedly consistent with the prior dictum of the Maryland Court of Appeals in *Funk v. Mullan Contracting Co.*, 197 Md. 192, 78 A.2d 632, 79 A.2d 152 (1951), in which the court, in construing a substantially identical provision in the Maryland Constitution, implied (at page 635 of 78 A.2d) that the above-described limitations during sessions in even years were inapplicable to special sessions convened during such years.

As noted above, the subject of legislative competence during special sessions in even years was not in issue in

the previous advisory opinion rendered by this court. That expression of dictum upon a serious constitutional question was a clear departure from the established practice of this court. In *State ex rel. Smith v. Carey*, 10 Terry 143, 49 Del. 143, 112 A.2d 26, at page 28 (1955), this court stated:

\* \* \* "court should refrain from dicta upon constitutional questions."

It is a well-settled rule of law that statements amounting to mere *obiter dicta* do not become binding precedents and fall outside the rule of *stare decisis*. See 14 Am.Jr., Courts, Sec. 83. The instant case is a clear example of the consequences flowing from unnecessary and voluntary expressions upon constitutional issues by a prior court. As stated by the Supreme Court of the United States:

"We doubt the effectiveness of a voluntary statement on a point not in issue [quoting from *Cooke v. New River Co.*, 38 Ch.D. 56, 70-71] \* \* \* *obiter dicta*, like the proverbial chickens of destiny, come home to roost sooner or later in a very uncomfortable way to the Judges who have uttered them, and are a great source of embarrassment in future cases." *Darr v. Burford*, 339 U.S. 200, 214, 70 S.Ct. 587, 595, 94 L.Ed. 761 (1950).

It is admittedly true that a literal reading of the individual words of Art. 2, Sec. 4, of the Delaware Constitution indicates that the limitations contained in that section are applicable only to regular sessions. However, it is a basic axiom of constitutional and statutory construction to ascribe a rational and reasonable purpose, if possible, to the authors of constitutional or statutory provisions. In the instant case, it clearly appears to be the intention of Art. 2, Sec. 4, to limit the activity of the Leg-

islature during even years to the three prescribed areas of permissible legislation. If the Chief Executive of the State and the Legislature were permitted, by this opinion, to utilize a special session to pass legislation admittedly prohibited at a regular session, the limitations contained in Art. 2, Sec. 4, would be rendered totally meaningless and nugatory since the Legislature may adjourn its regular session *sine die* at any time during an even year. We cannot believe that it was the intention of the authors of the constitutional provision to grant to a Legislature greater power during a special session than that enjoyed by it at a regular session.

Such a holding does not, as suggested by the dissent, imply an amendment to Art. 3, Sec. 16, of the Delaware Constitution. As noted above, the absolute power conferred by Art. 3, Sec. 16, is the calling of the Legislature into special session. This opinion respects that absolute and unquestioned power. However, the competence of the Legislature to pass legislation, after being validly convened in the special session, must meet the requirements enunciated in Art. 2, Sec. 4. The fact, noted in the dissent, that special or local legislation was passed at special sessions of the Legislature prior to the amendment (1959) of Art. 2, Sec. 4, of the Delaware Constitution is clearly irrelevant to the instant question.

The call of an extraordinary session under Art. 3, Sec. 16, although entrusted to the sole discretion of the Governor, is clearly designed as a vehicle to allow the Legislature, upon the call of the Governor, to meet emergency situations. If such emergencies do in fact arise, either during a regular 30-day session or subsequently, legislation passed predicated upon the existence of an acute emergency would, of course, be constitutional under the provisions of Art. 2, Sec. 4, of the Delaware Constitu-

tion. In the instant case, since Art. 3, Sec. 16, is dealing with emergencies, the requirement that legislation passed at a special session be governed by the restrictions of Art. 2, Sec. 4, renders both provisions mutually consistent with each other. Accordingly, unless an acute emergency exists, Question No. 2 must be answered in the negative. In view of our answer to the second question, no answer is required to Question No. 3.

Upon the second question, the opinion of Justice WOLCOTT is as follows:

The amendment of Art. 2, Sec. 4, does not purport in terms to affect the authority conferred upon the Governor and the General Assembly by Art. 3, Sec. 16, except to limit such a special session convened by the Governor to a period not longer than 30 days. The limitation as to matters which may be considered by the General Assembly in terms applies only to the 30-day regular session of the General Assembly held in even-numbered years. That this is so requires no further demonstration than to read the amended section, itself.

This, it seems to me, makes it plain that there was no intent, at least no expressed intent, in amending Art. 2, Sec. 4, to change the respective powers of the Governor and the General Assembly with respect to special sessions of the General Assembly to be called pursuant to the authority of Art. 3, Sec. 16.

*Whiteman's Ex'x v. Wilmington & S. Railway Co.*, 2 Har. 514, makes it plain that the power of the Governor under Art. 3, Sec. 16, to convene the General Assembly in special session may not be limited by judicial action. The determination of what is an extraordinary occasion lies solely within his power to decide.

Similarly, there is no limitation in Art. 3, Sec. 16,

upon the subject matters which the General Assembly may consider when once convened in special session. Not only is there no expressed limitation on the power of the General Assembly in this respect but the history of special sessions of the General Assembly demonstrates clearly that that body was free, or felt free in any event, to consider any type of legislation it desired. See, e.g., the great variety of acts passed at special sessions and recorded in Volumes 31, 38 and 39 of the Laws of Delaware.

Unless, therefore, the amendment of Art. 2, Sec. 4, somehow limits the power of the Governor and the General Assembly under Art. 3, Sec. 16, that power remains undisturbed.

The majority seeks to find such a limitation by implication. It carries over to special sessions convened by proclamation under Art. 3, Sec. 16, the limitation upon the power of the General Assembly to act imposed upon the regular short session in even-numbered years. This, in my opinion, is judicial legislation in the guise of construction and may not be done.

The fallacy in the majority's conclusion is demonstrated by its failure to carry this implication to its fullest extent and limit the power of the Governor to convene a special session. The Governor's power has been left undisturbed, but in some mysterious fashion Art. 2, Sec. 4, has been found to be a limitation of power with respect to the General Assembly meeting in special session. If it was impliedly intended to amend Art. 3, Sec. 16, with respect to the General Assembly, what in the amendment impliedly excludes the amendment of the Governor's power?

For the foregoing reasons, in my opinion, the answer to Question No. 2 should be in the affirmative.

CHARLES L. TERRY, Jr.
Chief Justice

DANIEL F. WOLCOTT

JAMES B. CAREY
Justices.