**IN THE SUPERIOR OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| KATHY CALLAWAY, PT, CHT, and RANDEEP KAHLON, MD, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. N23C-05-196 SKR CCLD |
| v. | ) ) | |
| DELAWARE EXAMINING BOARD OF PHYSICAL THERAPISTS AND ATHLETIC TRAINERS, | ) ) ) ) | |
| Defendant. | ) ) | |

Submitted: May 29, 2024
Decided: July 26, 2024

*Upon Plaintiffs' Motion for Summary Judgment,*
**GRANTED.**

*Upon Defendant's Motion for Summary Judgment,*
**DENIED.**

## MEMORANDUM OPINION AND ORDER

Michael L. Vild, Esquire, Cross & Simon, LLC, Wilmington, Delaware, M. Elizabeth Crum, Esquire, Burr & Forman LLP, Columbia, South Carolina, and James A. Hoover, Esquire, Burr & Forman LLP, Birmingham, Alabama, Attorneys for Plaintiffs.

Eileen Kelly, Esquire, Deputy Attorney General, State of Delaware Department of Justice, Dover, Delaware, Attorney for Defendant.

Myron T. Steele, Esquire, Carla M. Jones, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Attorneys for *Amicus Curiae* The Delaware Physical Therapy Association.

**RENNIE, J.**

# I. INTRODUCTION

Plaintiffs Kathy Callaway, PT, CHT, and Randeep Kahlon, MD (together, "Plaintiffs") sued Defendant Delaware Examining Board of Physical Therapists and Athletic Trainers (the "Board") to challenge the constitutionality of 24 *Del. C.* § 2616(a)(8) (the "Statute"). In short, the Statute prohibits physical therapists and athletic trainers (together, "PT/ATs") from working with or for physicians who refer patients to them. The Statute has been in effect for decades and recently withstood a proposed amendment. Plaintiffs' bear a heavy burden in challenging it.

It is not the judiciary's role to second-guess the legislature's policy choices. It is, however, the judiciary's role to ensure that the legislature applies its policy choices equally without arbitrarily burdening some individuals but not others. If the legislature arbitrarily discriminates against certain individuals, the Court has an absolute constitutional obligation to strike down the offending law. Under our foundational system of checks and balances, no amount of deference to the legislature could displace the Court's nondelegable role in that regard.

Here, there is no question that the Statute arbitrarily imposes burdens on PT/ATs that are not imposed on similarly situated healthcare providers. The Statute's employment restriction is almost[1] unique among the various healthcare providers

---

[1] As discussed more fully below, a similar employment restriction applies to massage therapists and technicians. That provision of Title 24 is not presently before the Court.

1

regulated under Title 24. Thus, for the Statute to be constitutional, there must be a rational basis to treat PT/ATs differently. There is not.

The Court wishes to be clear in this: The Court's conclusion is not based on an assessment of the merits of the legislature's reason for treating PT/ATs differently; instead, the Court's conclusion is commanded by the fact that the Board could not identify a single conceivable basis for the Court to even assess. The Board's only defense of the Statute with respect to Plaintiffs' equal-protection argument is that the Court should defer to the legislature's policy choices. But in order for the Court to defer to the legislature's reasoning, there must first be reasoning to which the Court can defer.

Because there is no rational basis to apply an employment restriction to PT/ATs but not other similarly situated healthcare providers, the Court is constrained to hold that 24 *Del. C.* § 2616(a)(8) violates the Fourteenth Amendment's Equal Protection Clause. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment and **DENIES** the Board's Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

### A. The Parties

Plaintiff Kathy Callaway, PT, CHT, is a licensed physical therapist in Delaware.[2] She is a co-founder of Callaway Franceschini, LLC, d/b/a Rise PT, which operates in four locations throughout Delaware.[3]

Plaintiff Randeep Kahlon, MD, is a certified orthopaedic surgeon in Delaware.[4] He is a principal at First State Orthopaedics.[5] First State Orthopaedics is one of Delaware's two predominant providers of orthopaedic services.[6]

The Board is a legislatively created body tasked with enforcing 24 *Del. C.* §§ 2601–21 (the "PT/AT Act") and regulating the practice of physical therapy and athletic training in Delaware.[7]

*Amicus curiae* The Delaware Physical Therapy Association (the "DPTA") is a chapter of the American Physical Therapy Association.[8] The DPTA "represents

---

[2] Affidavit of Kathy Callaway, PT, CHT, in Support of Plaintiffs' Motion for Summary Judgement (hereinafter, "Callaway Aff.") ¶ 4 (D.I. 38).

[3] *Id.* ¶ 6.

[4] Affidavit of Randeep Kahlon, MD, in Support of Plaintiffs' Motion for Summary Judgment (hereinafter, "Kahlon Aff.") ¶ 4 (D.I. 38).

[5] *Id.* ¶ 5.

[6] Affidavit of Stephen V. Rapposelli, PT, OCS, in Support of *Amicus Curiae* The Delaware Physical Therapy Association's Brief in Support of the Board's Motion for Summary Judgment (hereinafter, "Rapposelli Aff.") ¶ 11 (D.I. 28).

[7] *See* 24 *Del. C.* §§ 2601, 2603(a), 2604.

[8] Rapposelli Aff. ¶ 3.

approximately 500 physical therapists, physical therapist assistants, and students in the Delaware area."[9]

## B. The Statutory Scheme

The PT/AT Act establishes various rules for the practice of physical therapy and athletic training in Delaware. It directs that the Board's "primary objective . . . is to protect the general public (especially those persons who are direct recipients of services regulated by [the PT/AT Act]) from unsafe practices and from occupational practices which tend to reduce competition or to fix the price of services rendered."[10] The Board's "secondary objectives . . . are to maintain minimum standards of practitioner competency, and to maintain certain standards in the delivery of services to the public."[11]

Under the PT/AT Act, and subject to nuances that are immaterial here, PT/ATs can only treat a patient for a maximum of thirty days without a referral from, or consultation with, a licensed physician.[12] Hence, physicians control the demand for long-term physical therapy services in Delaware.

---

[9] *Id.* ¶ 6.

[10] 24 *Del. C.* § 2601.

[11] *Id.*

[12] 24 *Del. C.* § 2612(a)-(b). The referral or consultation can come from "any licensed health practitioner, who has been granted prescriptive authority for a condition within the scope of their respective practices." *Id.* In the interest of brevity, and in conformity with the briefing, this opinion will refer only to "physicians."

The Statute—24 *Del. C.* § 2616(a)(8)—is the focus of this litigation. The Statute places limits on a PT/AT's ability to share financial interests with physicians who refer patients to the PT/AT. Specifically, the Statute permits the Board to discipline PT/ATs who have:

> Engaged directly or indirectly in the division, transferring, assigning, rebating or refunding of fees received for professional services or who profits by means of a credit or other valuable consideration such as wages, an unearned commission, discount or gratuity with any person who referred a patient, or with any relative or business associate of the referring person.[13]

The Statute continues:

> Nothing in this paragraph shall be construed as prohibiting the members of any regularly and properly organized business entity recognized by Delaware law and comprised of physical therapists or athletic trainers from making any division of their total fees among themselves as they determine by contract necessary to defray their joint operating costs[.][14]

Similar restrictions on healthcare providers' abilities to share renumeration with referring physicians apply to massage therapists and technicians[15] as well as chiropractors.[16] The provision that applies to massage therapists and technicians is substantially identical to the Statute.[17] The provision that applies to chiropractors, in contrast, expressly excludes chiropractors "employed by or contracted with a

---

[13]  24 *Del. C.* § 2616(a)(8).

[14]  *Id.*

[15]  *Id.* § 5313(a)(7).

[16]  *Id.* § 711(b)(17).

[17]  *Id.* § 5313(a)(7).

Delaware licensed medical doctor or doctor of osteopathy that works in the State a minimum of 10 hours per week."[18] Other healthcare providers regulated by Title 24, including occupational therapists,[19] are not subject to an employment restriction similar to that contained in the Statute.[20]

The Statute has been interpreted once before.[21] Specifically, in 2002, the then-Chairperson of the Board requested and received an interpretation of the Statute from the Office of the Attorney General (the "AG Opinion").[22] Relevant here, the AG Opinion explained that "[t]he main purpose of [the Statute] is the protection of the public from unnecessary referrals to physical therapists which are based upon financial gain."[23] The AG Opinion concluded that the Statute "bars a physician-owned practice or group practice from referring their own patients to an in-house physical therapist in their employ."[24]

---

[18] *Id.* § 711(b)(17).

[19] *See id.* § 2015(a). The Court focuses on occupational therapists more so than other healthcare providers because "there is substantial overlap in healthcare services that occupational therapists, physical therapists and athletic trainers provide." Kahlon Aff. ¶ 6; *see also* May 29, 2024 Oral Argument Transcript (hereinafter "OA Tr.") at 59:7–9 (The Board: "I can point to no meaningful distinction between an occupational therapist and a physical therapist[.]").

[20] *See* Kahlon Aff. ¶ 19. The Court's own review of Title 24 confirms this.

[21] 24 *Del. C.* § 2616 has been amended since the previous interpretation of the Statute, but the substantive language for present purposes went unchanged. *See* 74 Del. Laws ch. 262, § 49 (2004); 79 Del. Laws ch. 213, § 2 (2014); 79 Del. Laws ch. 277, § 9 (2014); 79 Del. Laws ch. 406, § 17 (2014).

[22] Del. Op. Att'y Gen. 02-IB25, 2002 WL 31867899 (Oct. 10, 2002) (hereinafter, "AG Op.").

[23] *Id.* at *1.

[24] *Id.*

The AG Opinion also determined that "[a]lthough certain financial relationships with referring persons (including physicians) are prohibited, physical therapists and athletic trainers may utilize any legally recognized business entity in the State of Delaware, as long as they do not violate the referral provisions of [the Statute]." So, according to the AG Opinion, a physician and a PT/AT could own a business entity together, but the physician could not refer patients to that PT/AT.[25]

## C. Procedural History

The present litigation comes after an unsuccessful effort in 2022 by Plaintiffs' respective entities, Rise PT and First State Orthopaedics, to lobby the legislature to amend the Statute through Senate Bill No. 245.[26] That amendment would have, among other things, expressly allowed physical therapists[27] to work with and for physicians.[28]

In February 2023, Plaintiffs changed course and sought relief in the Court of Chancery.[29] In May 2023, Plaintiffs' claims were transferred to this Court.[30]

---

[25] *Id.* at *4.

[26] *See* Callaway Aff., Ex. A; Rapposelli Aff. ¶ 9; Opening Brief in Support of the Board's Motion for Summary Judgment (hereinafter, "Board's Mot."), Ex. A (D.I. 32).

[27] It appears that Senate Bill No. 245 would not have expressly provided similar protections for athletic trainers. *See* Board's Mot., Ex. A.

[28] *Id.*

[29] *See* Complaint (D.I. 1).

[30] *See id.*, Ex. 2.

7

Plaintiffs filed an Amended Complaint on June 2, 2023.[31] The Amended Complaint brings four counts, each seeking declaratory relief.[32] The Board answered the Amended Complaint on June 29, 2023.[33]

Following discovery, the Board moved for summary judgment on March 15, 2024.[34] Plaintiffs moved for summary judgment on April 3, 2024.[35] With the Court's leave, the DPTA filed an *amicus curiae* brief supporting the Board's Motion.[36] The parties fully briefed the cross-motions in April and May 2024.[37] On May 29, 2024, the Court heard argument on the cross-motions.[38]

## III. STANDARD OF REVIEW

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits" show "there is no

---

[31] *See* Amended Complaint (D.I. 2).

[32] *Id.* ¶¶ 40–65.

[33] *See* Board's Answer to the Amended Complaint (D.I. 6).

[34] *See* Board's Mot.

[35] *See* Opening Brief in Support of Plaintiffs' Motion for Summary Judgment (hereinafter, "Pls.' Mot.") (D.I. 38).

[36] *See Amicus Curiae* Brief of DPTA in Support of the Board's Motion for Summary Judgment (hereinafter, "DPTA Br.") (D.I. 28).

[37] *See* Plaintiffs' Answering Brief in Opposition to the Board's Motion for Summary Judgment (hereinafter, "Pls.' Opp'n") (D.I. 41); The Board's Answering Brief in Opposition to Plaintiffs' Motion for Summary Judgment (hereinafter, "Board's Opp'n") (D.I. 42); The Board's Reply Brief in Support of the Board's Motion for Summary Judgment (hereinafter, "Board's Reply") (D.I. 46); Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Summary Judgment (hereinafter, "Pls.' Reply") (D.I. 47).

[38] *See* Judicial Action Form (D.I. 50).

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[39] If the parties file cross-motions for summary judgment "and neither party argues the existence of a genuine issue of material fact, 'the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions'"[40] Summary judgment is an appropriate mechanism to answer discrete questions of statutory construction.[41]

## IV. PARTIES' CONTENTIONS

### A. Plaintiffs' Contentions

Plaintiffs raise four principal arguments. First, Plaintiffs disagree with the AG Opinion and argue that the Statute's second sentence, as written, allows intra-entity referrals between physicians and PT/ATs who are members of a common business entity—Plaintiffs call this the "Referral Exception."[42] Plaintiffs' next three arguments are in the alternative and challenge the Statute's constitutionality. In that regard, Plaintiffs suggest that the Statute is impermissibly vague.[43] Plaintiffs next argue that the Statute violates principles of equal protection because applying the

---

[39]  Del. Super. Ct. Civ. R. 56(c).

[40]  *Zenith Energy Terminals Joliet Hldgs. LLC v. CenterPoint Props. Tr.*, 2023 WL 615997, at *8 (Del. Super. Jan. 23, 2023) (quoting Del. Super. Ct. Civ. R. 56(h)).

[41]  *See Pike Creek Recreational Servs., LLC v. New Castle Cnty.*, 238 A.3d 208, 213 (Del. Super. Aug. 18, 2020).

[42]  Pls.' Mot. at 13–17.

[43]  *Id.* at 18–21

Statute's strictures to PT/ATs but not other similarly situated healthcare providers is not rationally related to a legitimate governmental interest.[44] Finally, Plaintiffs contend that the Statute violates principles of substantive due process because the Statute itself is not rationally related to a legitimate governmental interest.[45]

## B. The Board's Contentions

The Board rejects the suggestion that the second sentence of the Statute creates a "Referral Exception" for intra-entity referrals.[46] The Board supports the AG Opinion's interpretation that PT/ATs can be members of a business entity along with physicians but the referral prohibition in the Statute's first sentence still applies within that entity.[47]

With respect to the constitutionality of the Statute, the Board details the "broad judicial deference" and "presumption of validity" that legislative enactments are entitled to under the rational-basis test.[48] The Board then references the AG Opinion to argue that the risk of increased healthcare costs due to unnecessary, profit-motivated referrals is a rational basis for the Statute's profit-sharing prohibition.[49] The Board also notes the similar employment restriction imposed on massage

---

[44] *Id.* at 21–27

[45] *Id.* at 27–33.

[46] Board's Mot. at 8–11.

[47] OA Tr. at 53:2–18.

[48] Board's Mot. at 11–28.

[49] *Id.* at 25.

therapists, as well as a much more limited anti-kickback provision applicable to optometrists,[50] to suggest PT/ATs are not subject to disparate treatment.[51] The Board adds that the Statute's meaning is plain, precluding Plaintiff's vagueness challenge.[52]

## C. The DPTA's Contentions

Like the Board, the DPTA emphasizes the deference this Court owes to the legislature's policy choices.[53] The DPTA then explains the risks that are allayed by the Statute's employment restriction.[54] Specifically, the DPTA is concerned that permitting in-house referrals would "create a closed loop system where [physicians who employ or partner with PT/ATs] control both supply and demand for physical therapy services."[55] That would lead to an uncompetitive consolidation of PT/AT services and would incentivize unnecessary referrals, according to the DPTA.

## V. DISCUSSION

The Court's discussion proceeds in two steps. As a preliminary issue, the Court must settle the narrow interpretive dispute regarding the Statute's second

---

[50] *See* 24 *Del. C.* § 2113(a)(4) (prohibiting optometrists from "[s]olicit[ing] in person or through an agent or agents for the purpose of selling ophthalmic materials or optometric services which involves any form of kickback arrangement or where financial renumeration or payment in kind is made to a nonpractitioner to induce referral business from that nonpractitioner").

[51] Board's Mot. at 28–29.

[52] Board's Opp'n at 8–9.

[53] DPTA Br. at 5–6.

[54] *Id.* at 6–9.

[55] *Id.* at 8.

sentence—*i.e.*, whether Plaintiffs' so-called Referral Exception exists. The Court must then assess the Statute's constitutionality. Since the equal-protection analysis is dispositive in that regard, the Court does not offer *dicta* with respect to the parties' vagueness and substantive due process contentions.[56]

## A. The Statute Does Not Permit Intra-Entity Referrals.

"The goal of statutory construction is to determine and give effect to legislative intent."[57] "The starting point is the language of the statute."[58] "When the unambiguous language of the statute clearly reflects the legislature's intent, the plain meaning of the statutory language controls."[59] "A statute is ambiguous 'if it is reasonably susceptible of different constructions or interpretations' or 'if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature.'"[60] Ambiguous statutory language is "interpreted 'in a way that will promote its apparent purpose and harmonize it' with the statutory scheme."[61]

---

[56] *See State ex rel. Smith v. Carey*, 112 A.2d 26, 28 (Del. 1955) ("[A] court should refrain from dicta upon constitutional questions.").

[57] *DeMatteis v. RiseDelaware, Inc.*, 315 A.3d 499, 508 (Del. 2024) (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)).

[58] *Protech Mins., Inc. v. Dugout Team, LLC*, 284 A.3d 369, 375 (Del. 2022) (quoting *Jud. Watch, Inc. v. Univ. of Del.*, 267 A.3d 996, 1003–04 (Del. 2021)).

[59] *DeMatteis*, 315 A.3d at 508 (citing *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989)).

[60] *Id.* (quoting *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007)).

[61] *Protech Mins.*, 284 A.3d at 375 (quoting *Jud. Watch, Inc.*, 267 A.3d at 1003–04).

The parties agree with the AG Opinion with respect to most of the Statute's meaning. Specifically, both Plaintiffs and the Board acknowledge that the Statute's first sentence broadly prohibits financial entanglement between PT/ATs and referring physicians—Plaintiffs call this the "Referral Prohibition."[62] Likewise, the parties agree with the AG Opinion that a "properly organized business entity recognized by Delaware law and comprised of physical therapists or athletic trainers" need not exclusively have PT/ATs as members.[63] The parties' disagreement lies in what the Statute allows once physicians and PT/ATs join in a business entity.

The Statute's second sentence—the so-called "Referral Exception"—reads:

> Nothing in this paragraph shall be construed as prohibiting the members of any regularly and properly organized business entity recognized by Delaware law and comprised of physical therapists or athletic trainers from making any division of their total fees among themselves as they determine by contract necessary to defray their joint operating costs[.][64]

According to Plaintiffs, "[i]n enacting the Referral Exception, the General Assembly clearly intended to allow physical therapists to be members of Delaware business entities *and receive patient referrals* as long as they did not participate in a referral

---

[62] Pls.' Mot. at 15.

[63] *See* AG Op. at *4; Pls.' Mot. at 16; OA Tr. 53:7–11.

[64] 24 *Del. C.* § 2616(a)(8).

for profit scheme[65] prohibited by the Referral Prohibition."[66]  The Court, however, finds that Plaintiffs' insertion of the italicized text is an unreasonable departure from the Statute's plain language.

Plaintiffs fail to explain how the ability to jointly operate an entity and defray the attendant costs equates to a right to refer patients within that entity, or why the legislature would create a "Referral Exception" without using the word "referral." When pressed at oral argument, Plaintiffs said that, in their view, the phrase "division of their total fees" necessarily means "division of fees as a result of . . . the referral from the referring person to the receiving physical therapist."[67]  In support of that interpretation, Plaintiffs suggested that the Statute's second sentence must operate as an exception to the first sentence, lest it be meaningless.[68]

The Court declines to sway so far from the Statute's text in an effort to interpret the Statute.[69]  Instead, the Court finds that the unambiguous meaning of the Statute is the same as that described in the AG Opinion more than two decades ago:

---

[65] This is a reference to the anti-kickback portion of the Statute—*i.e.* the first clause of the Statute's first sentence.  Plaintiffs do not directly challenge that clause in this litigation.  Pls.' Mot. at 15. Plaintiffs' contest is specifically about the second clause of the Statute's first sentence, which proscribes "profit[ing] by means of . . . valuable consideration such as wages . . . with any person who referred a patient or with any relative or business associate of the referring person."  *Id.* (quoting 24 *Del. C.* § 2616(a)(8)).

[66] *Id.* at 16 (emphasis added).

[67] OA Tr. at 22:9–14.

[68] *Id.* at 23:14–24:2.

[69] *See Protech Mins.*, 284 A.3d at 375.

14

The Statute "does not preclude physical therapists and athletic trainers from making arrangements to be members of any properly organized business entities recognized by Delaware law in order to defray their joint operating costs *provided that the referral prohibitions in the first sentence of* [*the Statute*] *are not violated.*"[70]

Put differently, the Statute's second sentence guards against overly broad interpretations of the Statute that would restrict PT/ATs from "divi[ding] . . . fees received for professional services" even as a means of simply sharing expenses. For example, under the Statute, PT/ATs and physicians could form a business entity to lease a building and then divide their total fees as necessary to fairly allocate the costs of rent, maintenance, and other shared overhead. But, if the physician in that scenario referred patients to his or her business partner, that would then impermissibly violate the Statute's first sentence.[71]

The second sentence's status as an interpretive guidepost, rather than substantive alteration to the first sentence's strictures, is indicated by the beginning of the second sentence—*i.e.*, "[n]othing in this paragraph shall be construed."

---

[70]  AG Op. at *4 (emphasis added).

[71]  The Court notes that unless the referral prohibition applied in that circumstance, seemingly benign cost-sharing arrangements could be susceptible to abuse. For example, if a PT/AT and a physician divided their joint operating cost in proportion to their respective revenues, the physician would be incentivized to increase the PT/AT's revenue so that the PT/AT would pay a greater share of the costs. That situation could yield the same sort of financially motivated referrals that the legislature designed the Statute to prevent.

15

Plaintiffs belittle the difference between "an exception" and "a clarification,"[72] but the Court considers that difference to be important. The legislature's decision to phrase the Statute's second sentence as a limitation on how the first sentence should be construed indicates that the legislature did not intend to deviate from the express language of the first sentence and, instead, only intended to deter misinterpretations. Accordingly, the Court will not now use the Statute's second sentence to create a sweeping exception to the first sentence's otherwise strict rule. For those reasons, the Court adopts the interpretation of the Statute laid out in the AG Opinion.

**B. The Statute's Application to PT/ATs, but not Similarly Situated Healthcare Providers, is Unconstitutionally Arbitrary.**

The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."[73] "In any equal protection case, the threshold inquiry is the standard of review to be applied to the government action in question."[74] That "often-dispositive" inquiry turns on whether the burdened class is "suspect" or not.[75] Here, the parties

---

[72] Pls.' Opp'n at 5.

[73] U.S. CONST. amend. XIV, § 1.

[74] *State v. Topolski*, 303 A.3d 338, 356 (Del. Super. 2023) (quoting *Turnbull v. Fink*, 668 A.2d 1370, 1379 (Del. 1995)).

[75] *Id.* at 357 (citations omitted). Inherently suspect classifications include "race, color, religion, and ancestry." *See Burroughs v. State*, 304 A.3d 530, 543 (Del. 2023) (citing *Turnbull*, 668 A.2d at 1379–80).

agree that PT/ATs are not members of a suspect class and, therefore, the rational-basis standard applies.[76]

"The rational-basis standard is highly deferential—it clothes a statute in a 'strong presumption of validity,' requiring plaintiffs to prove the absence of 'a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"[77] "[I]f there is any reasonably conceivable state of facts that could provide a rational basis for the classification," the equal-protection challenge will fail.[78] But while the rational-basis test's teeth may be small, they are still teeth.[79] In other words, "rational basis review, while highly deferential, is still substantive review."[80]

Here, Plaintiffs have carried their burden to show that PT/ATs are treated differently than similarly situated individuals. The healthcare providers regulated

---

[76] *See* Pls.' Mot. at 21.

[77] *Burroughs*, 304 A.3d at 544 (quoting *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)).

[78] *Id.* (quoting *Heller*, 509 U.S. at 320).

[79] *See Topolski*, 303 A.3d at 365 ("The Third Circuit . . . has 'repeatedly warned that rational basis review is by no means toothless—a necessary corollary to and implication of rationality as a test is that there will be situations where proffered reasons are not rational.'" (cleaned up) (quoting *Heffner v. Murphy*, 745 F.3d 56, 79 (3d Cir. 2014))).

[80] *Id.*

by Title 24 include: podiatrists,[81] chiropractors,[82] dentists,[83] nurses,[84] occupational therapists,[85] optometrists,[86] pharmacists,[87] PT/ATs,[88] mental health professionals,[89] psychologists,[90] speech/language pathologists,[91] dieticians,[92] and massage therapists.[93] The Board did not suggest, and the Court has no reason to find, that those groups are not similarly situated for purposes of restricting financially motivated referrals.[94] Yet, of those groups, only PT/ATs and massage therapists are subject to an employment restriction like that found in the Statute.[95] Accordingly,

---

[81]  24 *Del. C.* §§ 500–22.

[82]  *Id.* §§ 700–19.

[83]  *Id.* §§ 1100–95.

[84]  *Id.* §§ 1901–38.

[85]  *Id.* §§ 2001–21.

[86]  *Id.* §§ 2100–23.

[87]  *Id.* §§ 2501–51.

[88]  *Id.* §§ 2601–21.

[89]  *Id.* §§ 3001–64.

[90]  *Id.* §§ 3501–22.

[91]  *Id.* §§ 3701–20.

[92]  *Id.* §§ 3801–12.

[93]  *Id.* §§ 5301–21.

[94]  *Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2023) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992))); *cf.* OA Tr. 59:7–9 (The Board: "I can point to no meaningful distinction between an occupational therapist and a physical therapist[.]").

[95]  *See id.* §§ 2616(a)(8), 5313(a)(7).

the determinative question is whether the disparate treatment of PT/ATs[96] is rationally related to a legitimate government interest.[97]

The Court's analysis of that question is necessarily limited in this instance. That is because no conceivable basis for the disparate treatment has been offered for the Court to analyze. Instead, the Board relied exclusively on the deference owed to the legislature under a rational basis review. At oral argument, the Court explicitly asked the Board what rational basis exists to apply an employment restriction to PT/ATs but not occupational therapists.[98] The Board responded: "Well, it's an issue of social policy and the general assembly made that determination[.] [I]n terms of why you would treat an OT or occupational therapist [differently] than a PT under the legislative scheme. I can't answer that."[99]

The Court will not belabor the uncontroversial point that *ipse dixit* is not enough to satisfy rational basis review. If it were, the rational-basis test would be no test at all, and, in effect, the Equal Protection Clause would not apply to non-suspect classes. In other words, if the legislature's mere decision to enact a law

---

[96] As noted, the Court is not called upon to assess the constitutionality of 24 *Del. C.* § 5313(a)(7) in this litigation, so the Court offers no comment on whether there might be a rational basis for that provision. *See supra* note 1. The Court also notes that the burdens imposed on massage therapists do not mean PT/ATs are not subject to disparate treatment. *See Parkell v. Senato*, 2016 WL 4059640, at *8 (D. Del. July 26, 2016) ("The Equal Protection Clause of the Fourteenth Amendment directs that *all* similarly situated individuals be treated alike." (emphasis added)).

[97] *Burroughs*, 304 A.3d at 544 (quoting *Heller*, 509 U.S. at 319–20).

[98] OA Tr. at 60:11–15.

[99] *Id.* at 60:16–20.

constitutes evidence of a rational basis for that law, no enactment could ever fail the rational-basis test. The law holds otherwise.[100]

The Court stresses that it does not discredit the pro-competitive, anti-collusive rationales underpinning the Statute generally. Whether and how to address those concerns is a policy decision only the legislature can make. But whatever policy the legislature adopts, it must apply that policy equally or not at all.

In this instance, the legislature applied one policy to PT/ATs and a different policy to almost every other healthcare provider regulated under Title 24. Since there is no rational basis for that distinction, the Court has a constitutional duty to hold that 24 *Del. C.* § 2616(a)(8) runs afoul of the Fourteenth Amendment's Equal Protection Clause and is, therefore, invalid.

## VI. CONCLUSION

24 *Del. C.* § 2616(a)(8) arbitrarily imposes restrictions on physical therapists and athletic trainers that are not imposed on similarly situated healthcare providers. Hence, 24 *Del. C.* § 2616(a)(8) violates the Fourteenth Amendment's Equal Protection Clause. The Court is therefore constrained to **GRANT** Plaintiffs' Motion for Summary Judgment and **DENY** the Board's Motion for Summary Judgment.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

---

[100] *See, e.g., Topolski*, 303 A.3d at 365.

20